FILED
2011 Sep-30  PM 01:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JEFFREY BEEGLE | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | Civil Action No. |
| vs. | ] | 4:10-CV-1907-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I. Introduction.

The plaintiff, Jeffrey Beegle, appeals from a decision of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Mr. Beegle timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Beegle was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and has a high school education. (Tr. at 19.)

1

His past work experiences include employment as a carpenter, dye machine operator and supervisor, textile worker, grounds keeper, carpet cleaner, and driver. (Tr. at 57.) Mr. Beegle claims he became disabled on September 15, 2006, due to osteoarthritis in his right knee, carpal tunnel syndrome, mental retardation, and depression. (Tr. at 13.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to

step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that Mr.

3

Beegle meets the insured status requirements of the Social Security Act through March 31, 2012. (Tr. at 13.) She further determined that Mr. Beegle has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) Although Plaintiff did some part-time work after the onset date of his alleged disability, the amount earned for that work fell below the threshold amount for substantial gainful activity. (*Id.*)

According to the ALJ, Plaintiff's osteoarthritis in the right knee and carpal tunnel syndrome are considered "severe" based on the requirements set forth in the regulations. (Tr. at 14.) The ALJ considered Mr. Beegle's mental impairments, but did not find them to be severe impairments. (*Id.*) She also found that his severe impairments neither meet nor medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16.) She determined that Mr. Beegle has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), subject to the following exceptions:

> [C]laimant should have a sit/stand option. Claimant is unable to push and pull with his lower extremities. He cannot climb ladders, ropes or scaffolds. He cannot kneel or crawl. He can no more than occasionally stoop or crouch. He has mild limitations in the ability to respond appropriately to supervisors, co-

4

workers, customers and other members of the general public; mild limitations in the ability to use judgment in complex work-related decisions and understand remember and carry out simple one and two step instructions; and deal with changes in routine work setting. He has moderate limitations in the ability to use judgment in detailed or complex work related decisions and understand remember and carry out simple one and two step instructions; and deal with changes in routine work setting. He has moderate limitations in the ability to use judgment in detailed or complex work related decisions and understand remember and carry out detailed to complex instructions. (*Id.*)

According to the ALJ, Mr. Beegle is unable to perform any of his past relevant work, he is a "younger individual," as that term is defined by 20 C.F.R. §§ 404.1564, he has at least a high school education, and is able to communicate in English. (*Id.* at 19.) However, transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Mr. Beegle is "not disabled," whether or not there are transferable job skills. (*Id.*) Using Medical-Vocational Rule 202.21, the ALJ determined there are a significant number of jobs in the national economy that the Plaintiff can perform such as a small products assembler, napper tender, and auto washer. (*Id.* at 20.) The

ALJ concluded her findings by stating that the Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 15, 2006 through the date of this decision." (*Id.*)

II. Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standard was applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide the facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial

evidence." *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

The plaintiff makes several arguments in support of his claim that the ALJ's decision should be reversed. First, he believes that the ALJ erred in finding that his mental condition is not severe. (Doc. 8 at 2.)  Within this argument, Plaintiff alleges that the ALJ substituted her own judgment for that of the examining psychologist and that the ALJ erred when she assumed an adverse inference from Plaintiff's lack of medical treatment. (*Id.*)

Second, the Plaintiff contends that the ALJ's credibility determination regarding his subjective complaints of disabling pain was not supported by substantial evidence. (*Id.*) Finally, Plaintiff argues that the ALJ did not pose a full and complete hypothetical question to the vocational expert. (*Id.*)

A. Severity of Plaintiff's Alleged Mental Impairments

Plaintiff alleges that the ALJ erred when she found that he does not have a severe mental condition, and in doing so substituted her own judgment for that of the examining psychologist, Dr. Robert Storjohann. (Doc 8 at 19 and 21.)

Plaintiff argues that he suffers from mental retardation and depression, and that these are severe mental impairments. The regulations require the ALJ to complete a Psychiatric Review Technique Form ("PRTF") when evaluating mental impairments. The PRTF specifies that the ALJ must address on a four-point scale how the claimant's mental impairment impacts four functional areas: daily activities, social functioning, concentration, persistence or pace, and episodes of decompensation. The ALJ must include the results of this evaluation in his findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) *see also* 20 C.F.R. §

404.1520a.  The regulations further provide, "If we rate the degrees of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

In this case, the ALJ included a PRTF in her findings and conclusions. In conducting her evaluation, the ALJ considered the Plaintiff's daily activities, the medical record, and the testimony of the medical expert, Dr. Doug McKeown.  The ALJ determined that Plaintiff had mild restriction in activities of daily living and noted that in his Activities of Daily Living Report, completed in October 2008, the Plaintiff stated that he lives by himself, cares for his son, "picks up the house," does his own laundry, manages his own finances, and goes hunting and fishing when other people take him. (Tr. at 15.)  The ALJ found that Plaintiff's restriction in social functioning was also mild. (*Id.*)  She looked at Dr. Storjohann's notes from Plaintiff's psychological examination, which reported Plaintiff stating that he has a good relationship with his mother and father and regular contact with his brother and sister. (*Id.*)  She also looked at Plaintiff's Activities of

9

Daily Living Report where he indicated that he regularly talks on the telephone and gets along with family, friends and neighbors. (*Id.*)  The ALJ concluded that Plaintiff has mild difficulties with regard to concentration, persistence or pace, and noted that the Plaintiff reported that he is able to pay bills, maintain a checking account, and follow directions. (*Id.*)  Finally, the ALJ pointed out that the Plaintiff has not experienced any episodes of decompensation for an extended duration. (*Id.*)  Based on this analysis, the ALJ concluded that the Plaintiff's alleged mental impairments were not severe.[1] (Tr. at 14.)

Although Dr. Storjohann diagnosed the Plaintiff with borderline intellectual functioning, generalized anxiety disorder, social phobia, severe

---

[1]Plaintiff makes the statement that the ALJ erred by not awarding benefits under Listing 12.04 and 12.05(c). (Doc. 8 at 20.)  Although the Plaintiff does not make an argument in support of this statement, he does provide a block quote from 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.04(c), indicating that he believes the ALJ should have found that the Plaintiff met the requirements of 12.04(c).  However, the ALJ's PRTF evaluation would preclude a finding that the Plaintiff has an Affective Disorder. The ALJ did not find any of the necessary requirements: decomensation of extended duration, an indication that a minimal increase in mental demands would cause the Plaintiff to decomensate, or a history of one or more years' inability to function outside a highly supportive living arrangement.  Likewise, the Plaintiff does not meet the requirements of 12.05(c) because, among other reasons, the evidence does not support an onset of the impairment before age 22, which is required by the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05.

depression, and personality disorder with dependent, avoidant, schizoid and depressive personality traits after a one-time psychological exam, the ALJ found that this assessment was not supported by the record and was inconsistent with that of the medical expert. (Tr. at 15.)  Dr. Storjohann examined the Plaintiff on January 15, 2009 and found that the Plaintiff had an overall IQ score of 64 and a GAF score of 40. (Tr. at 242.) Based on his IQ score, the doctor determined that Plaintiff's overall level of intellectual functioning was in the mild range of mental retardation. (*Id.*) Dr. Storjohann concluded, "Mr. Beegle appears to have moderate to marked deficits in his ability to understand, carry out, and remember instructions in a work setting. He appears to have marked to extreme deficits in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." (Tr. at 245.)   When filling out the Plaintiff's Residual Functional Capacity Questionnaire, Dr. Storjohann determined that the Plaintiff was not presently able to return to gainful employment, and there was not a time in the future when the Plaintiff could return to gainful employment. (Tr. at 249.)   Plaintiff argues that the ALJ substituted her own opinion for that of Dr. Storjohann when she assigned little probative weight

to his opinion.

The weight to be afforded a medical opinion regarding the nature and severity of the claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source had with the claimant, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 404.1257(d).  The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).

In making the decision to afford Dr. Storjohann's opinion little weight, the ALJ considered the Plaintiff's medical history, his daily activities, and the medical expert's testimony.  The ALJ noted that Dr. Storjohann's met with Plaintiff on only one occasion, and that his examination was the first

mention of Plaintiff being mentally retarded. (Tr. at 15.)  Further, the Plaintiff failed to allege any mental symptoms when he applied for benefits in September 2008. (*Id.*)  Additionally, the ALJ pointed out that the Plaintiff never failed any grades in school, passed the driver's license test on the first try, worked a semi-skilled job for sixteen years, worked a skilled job for three years, has lived by himself for four years, and is able to count change, pay bills, use a checkbook, and handle a savings account. (Tr. at 14.)

The medical expert, Dr. McKeown, testified that the Plaintiff did not have any documented history of mental health treatment or psychotropic medications.[2] *(*Tr. at 15.)  Dr. McKeown also remarked that Dr. Storjohann's own diagnoses were inconsistent with Plaintiff's IQ test result of 64.  (Tr. at 43.)  She noted that Dr. Storjohann's diagnosis of borderline mental actual function is a level significantly above an IQ score of 64, and that Plaintiff's

---

[2] Plaintiff argues that it was improper for the ALJ to consider his lack of mental health treatment or medication in her determination and argues that she should have developed the record on the issue of why he failed to seek medical treatment. (Doc. 8 at 25.)   However, the ALJ only has a duty to investigate where compliance with a prescribed course of treatment is at issue. *See Lucas v. Sullivan*, 918 F.2d 1567, 1572 (11th Cir. 1990).  It is proper for the ALJ to consider treatment prescribed with response and prognosis. 20 C.F.R. § 404.1513(b)(5).   Here, the Plaintiff was not prescribed treatment for his alleged mental defect.  This lack of treatment was properly considered by the ALJ and there was no need to develop the record further.

basic skills level of fifth or sixth grade is also above an IQ level of 64. (*Id.*) She also testified that Dr. Storjohann's residual functional capacity assessment was an overstatement not supported by the history or treatment of the Plaintiff. (Tr. at 44.)

Plaintiff's daily activities and medical history, as well as the testimony by Dr. McKeown provide a substantial basis for the ALJ to give little weight to Dr. Storjohann's opinion and support a conclusion that the Plaintiff did not suffer from a severe mental impairment.

B. Subjective Pain Testimony

Plaintiff argues that the ALJ did not state sufficient reasons for rejecting his subjective pain testimony. Plaintiff alleges that ALJ is required to accept the Plaintiff's pain testimony as true because her credibility determination was not supported by substantial evidence. (Doc. 8 at 27.)

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the

14

objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d at 1210 (11th Cir. 2005)(citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212.

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rule. 96-7p, 1996 WL 374186 (1996)("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.") "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a

whole." *Id.* (internal quotes omitted).

In this case, the ALJ indicated that based on the evidence, the Plaintiff's medically determinable impairments could reasonably be expected to cause the Plaintiff's alleged symptoms, but that the Plaintiff's statements "concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. at 17.)  In making her determination, the ALJ considered the Plaintiff's objective medical history for his knee pain and carpal tunnel syndrome, as well as the Plaintiff's daily activities.

The ALJ found that Plaintiff's testimony regarding his knee pain was not supported by the objective medical history in the record. (Tr. at 18.) In 2006, Mr. Beegle underwent an arthroscopy for pain in his right knee. (Tr. at 196.)  Two weeks later, he saw Dr. Gordon Hardy, his orthopaedic, for a follow-up visit. (Tr. at 204.)  Plaintiff had no complaints  and was advised to return in one month. (*Id.*)  Plaintiff returned to Dr. Hardy in April 2008, at which time he had persistent pain.  (*Id.)*  Dr. Hardy opined Plaintiff had

16

degenerative arthritis in his right knee and was unable to do any kind of manual labor. (*Id.*)  Plaintiff was told to take Advil PM for his pain. (*Id.*)  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that only moderate uses of pain medication did not support the severe limitations described by the claimant).  The ALJ determined that Dr. Hardy's opinion as to the Plaintiff's knee pain was consistent with a finding that the Plaintiff has the residual functional capacity to perform light work. (Tr. at 18.)

Dr. C.K. Jin concluded, when he saw Plaintiff for a consultative examination in November 2008, that until Plaintiff has total knee surgery on his right knee, he is unable to have any kind of productive job. (Tr. at 214.) The ALJ assigned little weight to Dr. Jin's opinion because it was inconsistent with Dr. Hardy's opinion and inconsistent with the claimant's activities. (Tr. at 18.)

Although Plaintiff takes issue with the ALJ's decision to give little weight to Dr. Jin's opinion (Doc. 8 at 24), the ALJ gave specific reasons for doing so.  Plaintiff claims that the ALJ substituted her opinion for that of Dr.

Jin.[3] (Doc. 8 at 24.)  However, the ALJ gave greater weight to Dr. Hardy

because he is an orthopedist who treated the patient on multiple occasions,

whereas Dr. Jin specializes in internal medicine and saw the Plaintiff on only

one occasion. (Tr. at 18.) *See King v. Barnhart*, 320 F. Supp.2d 1227, 1231-

32 (N.D. Ala. 2004)("More weight is accorded to the opinion of a specialist

than the opinion of a source who is not a specialist."); *see also Wilson v.*

*Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) ("Generally, a treating doctor's

opinion is entitled to more weight than a consulting doctor's.").

The ALJ also determined that Plaintiff's testimony regarding his

alleged carpal tunnel syndrome was not supported by the record. Mr. Beegle

---

[3]Plaintiff also claims that in his Functional Capacity Assessment dated November 2008, Dr. Hampton Smith, the examining consultative physician, agreed with Dr. Jin's assessment and that the ALJ also erred by substituting her opinion for that of Dr. Smith. (Doc. 8 at 24.)  This is a misreading and misquotation of Dr. Smith's comment.  Dr. Smith checked "yes" to the question, "Are there medical source conclusions about the claimant's limitations or restrictions which are significantly different from your findings." (Tr. at 221.) The next question asked Dr. Smith to cite the source's name, give the statement date, and explain why those conclusions are not supported by the evidence in file. (*Id*.)  Dr. Smith directly quoted Dr. Jin's assessment, attributed it to "MSO," or "medical source opinion," and underneath wrote, "The MSO has been considered and is given some weight." (*Id*.)  At another point in the assessment Dr. Smith wrote, "leions [sic] of both knees is considered partially credible. The C.E. limitation of right knee flexion to 30 degrees is not considered accurate since the claimant seems to have no restriction to sitting." (Tr. at 220.)  Plaintiff's assertion that it was Dr. Smith's opinion that Plaintiff could not work is unsupported by the record.

did not allege carpal tunnel syndrome as a basis of disability in his application for benefits. (Tr. at 178-85.)  Dr. Hardy's records make no mention of carpal tunnel syndrome, and Dr. Jin concluded that Plaintiff's carpal tunnel was "not really bad." (*Id.*) Further, Plaintiff stated at the hearing that he does not take any medication or use braces to relieve the pain or symptoms. (Tr. at 36.)  For these reasons, the ALJ concluded that the objective medical history did not support the Plaintiff's subjective pain testimony regarding his alleged carpal tunnel syndrome.

Finally, the ALJ considered Plaintiff's daily activities in her determination that the subjective pain testimony was not credible.  The ALJ noted that the Plaintiff does not need help with personal care needs such as brushing his teeth or cutting his food. (Tr. at 18.)   The ALJ also determined that because Plaintiff has applied for multiple jobs, he does not consider himself disabled. (Tr. at 19.) Finally, although Plaintiff stated at his hearing in March, 2010, that "he could walk 50 feet, stand 30 minutes, sit 1.5 hours and lift at least a gallon of milk," the ALJ found that these limitations were not supported by other evidence.  (*Id.*)  In his October 2008 Function Report, Plaintiff stated he picked up around the house, cared for

his son on weekends, did his own laundry, went outside once a day, and went hunting and fishing when someone was able to take him. (Tr. at 185.)

The ALJ determined that the objective evidence and treatment records supported a finding that claimant has the ability to perform light work. (Tr. at 19.) The ALJ specifically addressed Plaintiff's subjective pain testimony in her opinion and provided explicit reasons for determining that his testimony was not credible. Therefore, the ALJ's finding is supported by substantial evidence and she was not required to accept Plaintiff's pain testimony as true.

C. Hypothetical Question to the Vocational Expert

Finally, the Plaintiff contends that the ALJ's hypothetical question to the VE was incomplete because it did not account for Plaintiff's pain and weakness or need to regularly miss work. (Doc. 8 at 29.)

In satisfying the fifth step of the sequential process, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)

(referencing *Allen v. Sullivan*, 880 F.2d 1200, 1201) (11th Cir. 1989)).  In so doing, "the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of [the] existence of jobs in the national economy that the claimant can perform."  *Id.* (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996)).  To satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  However, an ALJ need only include a claimant's credible limitations.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  If the Commissioner demonstrates that there is work available in significant numbers in the national economy that the claimant can perform, "the claimant must prove she is unable to perform those jobs in order to be found disabled."  *Id.* at 1228.

Plaintiff first argues that the ALJ's hypothetical question did not mention Plaintiff's pain and weakness. While the ALJ did not specifically reference pain and weakness, the hypothetical did take Mr. Beegle's pain and weakness into consideration. The first hypothetical excluded or limited

foot control operating, ladder climbing, using ropes or scaffolds, crawling, crouching and stooping. (Tr. at 59.)  The second hypothetical incorporated Dr. Smith's opinion regarding the plaintiff's planned knee surgery, which excluded or limited pushing and pulling with the lower extremities, balancing, stooping, kneeling, crouching, crawling, unprotected heights, hazardous machinery, and exposure to extreme heat or cold. (Tr. at 61.) The VE testified that based on the limitations outlined in both hypotheticals, there would be sufficient jobs in the national economy for Mr. Beegle. (Tr. at 60 and 61.)

The Plaintiff claims that "[w]hen the ALJ included appropriate limitations, the VE said Claimant could not work." (Doc. 8 at 30.)  The plaintiff follows this claim by quoting the ALJ's third hypothetical to the VE, which includes the limitations assessed by Dr. Storjohann, followed by the VE's response that the individual could not perform the Claimant's past work.[4] (*Id* (quoting Tr. at 62).)  However, the ALJ was not required to rely

---

[4]The VE was not asked, nor did he state whether there would be sufficient jobs in the national economy for Mr. Beegle if Dr. Storjohann's assessed limitations were taken into account. The VE only addressed whether Mr. Beegle could return to his past relevant work as a dye machine operator. (Tr. at 62.)

22

on the VE's response to this hypothetical.  The Eleventh Circuit has held that the Commissioner can disregard responses to hypotheticals not supported by the record. *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).  An ALJ may also omit hypoethetical questions which are not supported by medical records or are alleviated by medication.  *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1270 (11th Cir. 2007).  The ALJ was not required to include Dr. Storjohann's assessment in his hypothetical because he did not find Dr. Storjohann's opinion to be credible.  Therefore, the ALJ did not fail to include appropriate limitations in his hypothetical to the VE.

The Plaintiff next argues that the ALJ erred by not including Plaintiff's need for rest or probable absences from work in her hypothetical to the VE. However, the ALJ specifically asked the VE  how many unexcused or unscheduled absences employers customarily permit per month and how many regular breaks employers customarily permit per day. (Tr. at 62.)  The VE responded that employers normally permit no more than two unscheduled absences per month and allow three breaks per day. (*Id.*) Although the ALJ asked the VE how many days could be missed, there is no mention of Plaintiff's need for unscheduled absences in his medical records

23

or in his testimony.  Likewise, the Plaintiff makes no argument in his brief supporting a contention that he would need to miss more than two work days per month nor that he would need to take more than three breaks per day.[5]

The ALJ's hypothetical included all of the limitations found in her residual functional capacity assessment. (Tr. 59-62.)  Plaintiff's argument does not contain any allegations that he cannot perform the jobs identified by the VE.  The ALJ is only required to base her hypothetical questions on those findings which have support in the record. *See Graham v. Bowen,* 790 F.2d 1572, 1576 (11th Cir. 1986). Here, the ALJ has done so, and her decision to discredit Dr. Storjohann's opinion and Mr. Beegle's testimony was properly supported by substantial evidence.

---

[5]Plaintiff does add emphasis to a block quote from *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985), which reads, "[The ALJ] did not request the expert to assume the claimant's anxiety or depression, both of which the ALJ found to be 'severe impairments limiting the claimant's ability to work.'"(Doc. 8 at 30.)  Even if Plaintiff's use of emphasis is considered as an argument that the ALJ did not take Plaintiff's alleged depression into account when posing his hypothetical to the VE, this argument fails.  The ALJ was not required to include Plaintiff's alleged depression because, unlike in *Pendley,* where the ALJ considered the claimant's depression to be a "severe impairment limiting . . . ability to work," the ALJ in this case found that Mr. Beegle does *not* have a "severe" mental impairment. (Tr. at 14.)

IV. Conclusion.

Upon review of the administrative record, and considering all of Mr. Beegle's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 30th day of September 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458

25